UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT VERNON,

                      Plaintiff,

                      -vs-

CAROLYN W COLVIN,
  *Acting Commissioner of Social Security*,

                      Defendant.

**DECISION AND ORDER**

15-CV-6387-CJS

---

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | William J. McDonald, Jr., Esq.<br>Bond and McDonald<br>91 Genesee Street<br>Geneva, NY 14456<br>(315) 789-0449 |
| For Defendant: | Kathryn Sara Pollack, Esq.<br>Joanne Jackson, Esq.<br>Social Security Administration<br>Office of General Counsel<br>26 Federal Plaza<br>Room 3904<br>New York, NY 10278<br>(212) 264-2426<br><br>Kathryn L. Smith, A.U.S.A.<br>U.S. Attorney's Office<br>100 State Street<br>Rochester, NY 14614<br>(585) 263-6760 |

## INTRODUCTION

    **Siragusa, J.** This case is before the Court on cross-motions for judgment on the pleadings. Pl.'s Notice of Motion, Jan. 28, 2016, ECF No. 8; Def.'s Notice of Motion, May 11, 2016, ECF No. 13. Plaintiff seeks reversal of the Commissioner's decision denying disability insurance benefits to him. After reviewing the papers and hearing oral argument, the Court

reverses the Commissioner's decision and remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation of benefits.

## BACKGROUND

Plaintiff applied for disability insurance benefits on May 30, 2012. He alleged that his disability began on September 24, 2011. R. 168. The Commissioner administratively denied his application on July 23, 2012, R. 90, and Petitioner was granted a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ denied benefits. R. 12–24. The ALJ's denial became the final decision of the Commissioner when, on June 11, 2015, the Appeals Counsel denied Plaintiff's request for review. R. 1. He filed this action on June 26, 2015. Compl., ECF No. 1.

*Vocational Background*

Plaintiff is presently 43 years old. R. 161. He attended school through the seventh grade and holds a special education diploma. R. 198, 252, 276. He reads at a fourth grade level and receives assistance reading his mail. He had to have the written driver's test read to him, R. 49, and obtain assistance writing school notes for his son. R. 50. The ALJ determined that Plaintiff has no past relevant work history. R. 22.

*Medical History—Physical*

On July 2, 2012, consultative examiner Elizama Montalvo, M.D., a family medicine doctor at Industrial Medicine Associates, P.C., conducted an internal medical examination of Plaintiff and concluded that he had mild to moderate limitations in bending, lifting, carrying, and reaching. She recommended he received further evaluation for his eye condition and concluded that he had a mild limitation with regard to anything that required fine visual acuity. R. 256–59.

Orthopedist Nitin Banwar, M.D., examined Plaintiff on March 14, 2013, and wrote:

Pain tingling and numbness affecting his nondominant right upper extremity.

> Originates on the neck radiates down to his elbow and down to little ring and little finger of his right hand. He wakes up during the night with this discomfort. She [sic] has noticed some weakness of grip strength and has started dropping objects.

R. 303. Upon examination, Dr. Banwar noted that Plaintiff weighed 310 pounds, was five feet eleven inches tall with a BMI of 43.2. Further, he wrote:

> Slightly limited flexion, extension, lateral flexion and rotation of the cervical spine. Full range of motion of the right shoulder with mild tenderness over the rotator cuff. No instability. Full flexion and extension pronation supination of the elbow. Questionably positive Tinet's at the ulnar groove of the elbow. Questionably positive Phalen's test. At the wrist diminished sensation along ring and and [sic] little finger. Excellent radial and ulnar pulses with good collateral circulation.

R. 303. Dr. Banwar noted that X-rays of Plaintiff's cervical spine "demonstrated good alignment with preservation of intervertebral disc space," but noted also "slight narrowing at C6 with anterior osteophytosis." *Id*. He concluded that Plaintiff suffered from "[d]egenerative cervical intervertebral disc disease with possible cervical radiculopathy," and recommended EMG nerve conduction studies. R. 304.

On April 4, 2013, Dr. Banwar noted Plaintiff continued to have numbness and tingling in his right thumb and index middle ring and little finger of his right hand. R. 305. On examination, Dr. Banwar determined that Plaintiff had "full range of motion of her [sic] right shoulder and right elbow. Diminished sensation in the median and ulnar nerve distribution of his right hand is diminished. Positive Phalen's and Tinel's of the wrist and the median nerve. Positive Tinel's at the elbow in the ulnar groove." Dr. Banwar concluded with this: "Patient will be scheduled for a simultaneous right carpal tunnel release and aneurolysis or transposition at the elbow." R. 306. He performed the surgery on May 17, 2013. R. 296. During the surgery, "[t]he ulnar nerve was identified within the ulnar groove and neurolysis

was performed with division of the transverse retinacuium completely freeing up a very adherent nerve." R. 297.

*Medical History—Psychological*

On July 2, 2012, Christine Ransom, Ph.D., a consultative examiner with Industrial Medicine Associates, P.C., performed a psychiatric examination of Plaintiff. In her report, she concluded that Plaintiff suffered from major depressive disorder and moderate and probable borderline intellectual capacity. R. 254. She concluded her report with these recommendations: "Please seek treatment for depression. Prognosis: Fair to good with appropriate treatment for depression and fair with regard to borderline intellectual capacity." R. 255.

On July 11, 2012, a state agency consultant, A. Hochberg, Ph.D., relying on medical reports and Plaintiff's disability application, concluded that Plaintiff suffered from an affective disorder, R. 81; that his memory was impaired by limited intellectual functioning, R. 84; and that he did not always deal appropriately with stress, R. 86. Dr. Hochberg further concluded that Plaintiff suffered mild limitations in the activities of daily living, and maintaining social function. With regard to maintaining concentration, persistence, or pace, the doctor concluded Plaintiff suffered from a moderate limitation. R. 81. Dr. Hochberg gave "great weight" to the records from Industrial Medicine Associates, PC, discussed above. R. 82.

On March, 1, 2013, Christa Dinolfo, Psy.D., examined Plaintiff at his counsel's request. In a comprehensive six-page report, she diagnosed him with major depressive disorder (moderate), borderline intellectual functioning, and back and leg pain. R. 281. She extensively analyzed his cognitive abilities, writing in her "Evaluation Summary" the following:

> Mr. Vernon is a 40 year-old Caucasian unemployed man. A previous psychiatric evaluation by Christine Ransom, Ph.D., diagnosed Mr. Vernon with Major Depressive Disorder, Moderate and "Probable" Borderline Intellectual Functioning.
>
> Based upon available medical records, Mr. Vernon's self-report in the clinical

4

Interview, and his report of symptoms on the MCMI-III,[1] Mr. Vernon experiences a significant amount of pain that has impacted his daily functioning and his emotional state. He currently seems to suffer from symptoms of depression, including sadness, irritability, weight gain, and sleep difficulties. As such, his symptoms meet criteria for a diagnosis of Major Depressive Disorder, Moderate. Mr. Vernon reported that he has felt this way for approximately two years. As such, he is unable to maintain employment and his self-worth and emotional state has been impacted negatively. It also should be noted that it is unclear as to whether his pain is psychologically produced and a symptom of his depression, or if it is due to a medical condition and thus causing symptoms of depression.

Furthermore, the results of this evaluation revealed that his cognitive capacities are limited. Based upon his results on the WAIS-IV,[2] Mr. Vernon's Full Scale IQ falls within the Extremely Low range (FSIQ = 67). The significant split between his Verbal Comprehension Index (VCI = 78; Borderline range) and his Perceptual Reasoning Index. (PRI = 69; Extremely Low range) suggests that his verbal and nonverbal abilities are not equally developed and that his Full Scale IQ score is not truly representative of his general abilities. His other composite scores were also quite varied as well (Working Memory Index = 83; Low Average range, and Processing Speed Index = 56; Extremely Low range). Although his adaptive functioning abilities were not assessed in this evaluation, it does not seem as though Mr. Vernon meets criteria for Mild Mental Retardation because historically, he has been capable of completing many activities of daily living and held full-time employment consistently. It seems as though his activities of daily living are currently impacted by his pain rather than his cognitive abilities. Thus, a diagnosis of Borderline Intellectual Functioning seems most appropriate.

It is recommended that Mr. Vernon meet with his primary care physician and complete follow-up appointments with specialists as needed. He commented during the evaluation that he just recently received notification of an active health Insurance policy. Given his current depressive symptom presentation, it is recommended that he participate in an individual outpatient psychotherapy that provides emotional support and helps Mr. Vernon to establish healthy coping strategies. In addition, since he presents with vegetative symptoms of depression (fatigue, low energy, *etc.*), he may benefit from a psychiatric consultation for possible medication recommendations.

R. 280–81.

---

[1] Millon Clinical Multiaxial Inventory-III. R. 280.
[2] Wechsler Adult Intelligence Scale – Fourth Edition. R. 279.

## STANDARD OF LAW

The pertinent statute states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

> The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (citations omitted).

## ANALYSIS

### *Mental Residual Functional Capacity*

Plaintiff's first argument is that the ALJ incorrectly evaluated the opinion of Dr. Dinolfo, his examining psychologist. Since the vocational expert testified that Plaintiff would not

6

be able to work with the limitations Dr. Dinolfo identified, he argues that had the ALJ given the proper weight to her opinion, she would have found Plaintiff disabled. R. 67–74.

In an attachment to her six-page report, Dr. Dinolfo indicated with "x"s that Plaintiff had a poor ability to complete a normal workday on a sustained basis, remember detailed instructions, and concentrate and attend to a task over an eight-hour period. R. 282-83. The Commissioner argues that Dr. Dinolfo's "x"s are supported only with a notation of "see report," and that the report is insufficiently detailed to support these conclusions and contains internal inconsistencies. Plaintiff filed a reply in which he countered that Dr. Dinolfo outlined the evidence supporting her conclusions (a review of records, clinical interview of Plaintiff, and two psychological tests she administered to him). R. 279. He argues, "[i]t is unclear how a single psychological evaluation could be better supported than by the extensive discussion presented in Dr. Dinolfo's report." Pl.'s Reply Mem. of Law 2, Jun. 1, 2016, ECF No. 14.

The ALJ did not cite to any inconsistencies as a basis for granting little weight to Dr. Dinolfo's report. The ALJ wrote the following:

> Independent medical examiner Dr. Dinolfo offered opinions that the claimant has fair abilities to understand and remember; fair social interactions; fair to poor concentration; and that the claimant's condition would deteriorate "under stress." Dr. Dinolfo completed an evaluation, a form providing by the claimant's representative, noting mostly fair abilities in multiple critical areas for meeting the demands on unskilled work, but failed to provide any narrative to support her assessment.

R. 21–22. Evidently the ALJ missed Dr. Dinolfo's thorough report, which preceded the checklist form, and contained an extensive analysis of her findings and test results. The ALJ then referred to Dr. Dinolfo's opinion that Plaintiff's symptoms related, "back to the alleged onset of disability when Dr. Dinolfo did not examine the claimant until February 2013. I thus give this one-time examination limited weight." R. 22.

> The only mention of contradictions by the ALJ is this:
>
> The report notes some contradictions in the claimant's responses to the examiners testing, changing details upon further questioning and providing vague descriptions of complaints. Lastly, the claimant repeated to this examining source a fairly extensive work history, which is contradicted by the consultative examination report obtained by the Social Security Administration. Although this could be a reporting error but the consultative examiner, this discrepancy remains unresolved and it was not clarified by the testimony of the claimant (Ex. 8F).

R. 22. The ALJ's criticism of Plaintiff does not weaken Dr. Dinolfo's analysis or conclusions.

Dr. Dinolfo explained that Plaintiff's

> report during the clinical interview was slightly inconsistent. That is, he initially made one report and upon clarification the details changed. (Examples included amount of time spent at jobs, estimated amount of sleep, *etc.*) This seemed to be due to limited cognitive capacity versus conscious manipulation of information. In fact, Mr. Vernon was compliant with all of the tasks required of him in the evaluation.

R. 278. Far from undermining the doctor's analysis, Dr. Dinolfo's meticulous relation of the details of her observations lends gravities to her conclusions. In contrast, the reports to which the ALJ gave "some weight" and "great weight" were significantly less analytical and detailed. The Court is mystified by why the ALJ would give "great weight" to the opinion "of the State agency psychological consultant at the initial level," R. 21, Dr. Hochberg, while only assigning Dr. Ransom's assessment "some weight." R. 22. Dr. Hochberg never examined Plaintiff, whereas both Dr. Ransom and Dr. Dinolfo did examine him. Further, Dr. Hochberg's assessment gave great weight to Dr. Ransom's assessment. Further still, the ALJ discounted Dr. Dinolfo's report, in part, because she examined him only once. R.22. How the ALJ could give more weight to a non-examining doctor, who greatly relied on the report of an examining doctor, while at the same time discounting the opinions of the two examining doctors is puzzling.

The Commissioner also argues that Dr. Dinolfo's report showed that "she believed Plaintiff's limitations were not primarily mental in nature, stating that 'his activities of daily living are currently impacted by his pain rather than his cognitive abilities.'" Comm'r Mem. of Law 13 (citing R. 281), May 11, 2016, ECF No. 13-1. Dr. Dinolfo wrote that phrase in connection with her analysis of Plaintiff's adaptive functioning abilities, which she did not assess. Finding that Plaintiff was mentally "capable of completing many activities of daily living and held full-time employment consistently," Dr. Dinolfo concluded that it did not seem Plaintiff met the criteria for mild mental retardation. From this, the Commissioner argues before this Court that Dr. Dinolfo's phrase implies Plaintiff was mentally capable of holding down a job. The Commissioner's Social Security Ruling 96-8p states in relevant part as follows:

> Ordinarily, RFC[3] is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p. As the district court noted in *Polidoro v. Apfel*, No. 98 Civ. 2071 (RPP), 1999 U.S. Dist. LEXIS 4832 (S.D.N.Y. 1999):

> A claimant need not be an invalid, incapable of performing any daily activities, in order to receive benefits under the SSA. *See Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). A claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job. *See Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).

*Polidoro*, 1999 U.S. Dist. LEXIS 4832 *24. Proof that Plaintiff could perform limited daily activities of living is not proof of the mental capability to perform sustained work activities. Dr. Dinolfo and Dr. Ransom both diagnosed Plaintiff with major depressive disorder, moderate,

---

[3] Residual functional capacity.

and borderline intellectual functioning.[4] Both doctors recommended therapy for his depression, or, as Dr. Ransom put it, "please seek treatment for depression." R. 285.

Moreover, the ALJ's hypothetical question to the vocational expert neglected to include the limitation of borderline intellectual functioning, or address his inability to read above the fourth grade level. R. 63–64, 66. Yet, her findings included a determination that Plaintiff "has the following severe impairments::…(5) mental impairments described as major depressive disorder and borderline intellectual functioning…." R. 14. This was error. *See De Leon v. Secretary of Health & Human Services*, 734 F.2d 930, 936 (2d Cir. 1984) ("Although he summarized the psychologist's report in his decision, the ALJ did not test the report's conclusions by presenting them in hypothetical questions to the vocational consultant…. Surely a borderline IQ has a bearing on employability, even as a mop-pusher, porter, or maintenance man.").

### *Physical Residual Functional Capacity*

Turning to the ALJ's physical RFC determination, Plaintiff argues that she cited no medical evidence to support her conclusion that Plaintiff could perform light work. The Commissioner responds that her RFC determination need not perfectly correspond with a particular medical opinion, citing *Matta v. Astrue*, 508 F. App'x 53 (2d Cir. 2013).

In *Matta*, the Second Circuit wrote, "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta*, 508 Fed. Appx. at 56. Here, the ALJ cited to no medical evidence in support of her physical RFC determination.[5] The only medical evidence regarding physical

---

[4] Dr. Ransom included the word "probable" with regard to borderline intellectual capacity. R. 254.
[5] The Court rejects the Commissioner's counsel's position, advanced at oral argument, that since the Record contained no information showing that Plaintiff was not capable of performing light work, the

RFC is in Dr. Montalvo's report, in which she concluded only that Plaintiff has a "[m]ild to moderate limitation in bending, lifting, carrying, reaching." R. 259.[6] The Record does not contain substantial evidence to support the ALJ's determination that Plaintiff has the ability to perform work at the light exertional level. R. 20. The ALJ identified three jobs Plaintiff could, in her opinion, perform: courier, mail clerk, and hand packager. R. 23. Mail clerk and hand packager each require frequent reaching, handling, and fingering, while courier requires occasional reaching, handling, and fingering. R. 73. Dr. Montalvo's vague conclusion of mild to moderate physical limitations does not substantially support the ALJ's conclusion that Plaintiff could perform occasional or frequent reaching, handling, and fingering required for the jobs she identified.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence and is reversed pursuant to sentence four of 42 U.S.C. § 405(g), and the case is remanded for calculation of benefits.

IT IS SO ORDERED.

DATED:   October 3, 2016
         Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

ALJ's determination that he could perform light work is supported by substantial evidence. The logical extension of counsel's argument would be that since the Record also contains no indication that Plaintiff cannot do heavy work, it therefore could support a finding that he is capable of performing work at that exertional level. Counsel's position is at odds with the remedial nature of the Social Security Act.

[6] The Record also contains a Disability Determination Explanation, which relied upon Dr. Montalvo's report to conclude that Plaintiff could occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. R. 83.